UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :    CR-08-076 (NGG)
          v.                :
                            :    February 14, 2008
LOUIS FILIPPELLI,           :
                            :    Brooklyn, New York
          Defendant.        :
                            :
----------------------------X


TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          ROSLYNN R. MAUSKOPF, ESQ.
                             UNITED STATES ATTORNEY
                             BY: JOSEPH LIPTON, ESQ.

**FILED**
**IN CLERK'S OFFICE**
**U.S. DISTRICT COURT E.D.N.Y.**

★ FEB 2 2 2008 ★

**BROOKLYN OFFICE**

                             ASSISTANT U.S. ATTORNEY
                             225 Cadman Plaza East
                             Brooklyn, New York  11201

For the Defendant:           ALAN FUTERFAS, ESQ.


Audio Operator:


Court Transcriber:           ARIA TRANSCRIPTIONS
                             c/o Elizabeth Barron
                             31 Terrace Drive, 1st Floor
                             Nyack, New York 10960
                             (215) 767-7700


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Criminal cause for arraignment.  Case

2   number 08-CR-76, United States versus Louis Filippelli.

3   Counsel, please state your name for the record.

4          MR. LIPTON:  Good afternoon, your Honor.  Joey

5   Lipton for the government.

6          THE COURT:  Good afternoon.

7          MR. FUTERFAS:  Good afternoon, your Honor.  Alan

8   Futerfas for Mr. Filippelli who is present.

9          THE COURT:  Good afternoon.  And, Mr. Filippelli,

10  good afternoon.

11         THE DEFENDANT:  Good afternoon, your Honor.

12         THE COURT:  Mr. Filippelli, you're here because

13  the grand jury has charged you -- and counsel both sides

14  correct me if I'm wrong -- with one count of --

15         MR. LIPTON:  Two counts, your Honor.

16         THE COURT:  Two counts.  It's racketeering and

17  conspiracy and --

18         MR. FUTERFAS:  No, it's neither.  It is --

19         THE COURT:  I have my notes wrong.

20         MR. FUTERFAS:  Okay.  It is Counts, I believe, ten

21  and eleven.  He's not charged in the RICO or the RICO

22  conspiracy.

23         THE COURT:  Alright.  Let me just take a quick

24  look then.

25         MR. FUTERFAS:  And one is a substantive of

1    extortion.  The other is a conspiracy but it's the same

2    nucleus of fact.

3            THE COURT:  Alright, that's your understanding as

4    well, Mr. Lipton?

5            MR. LIPTON:  It is correct, yes, Judge.

6            THE COURT:  Alright, forgive me for having my

7    notes wrong.  So, Mr. Filippelli, you're charged with two

8    counts as your counsel just explained.

9            Have you had a chance to see the indictment

10   against you?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Alright, do you understand the nature

13   of the charge?

14           THE DEFENDANT:  Yes.

15           THE COURT:  And, Mr. Futerfas, do you waive a

16   formal public reading of the indictment?

17           MR. FUTERFAS:  Considering that it is 169 pages, I

18   do.

19           THE COURT:  I think that's a wise choice.

20   Alright, how did your client plead to the two counts against

21   him?

22           MR. FUTERFAS:  Not guilty, your Honor.

23           THE COURT:  Alright.  Those pleas will be entered.

24   This is your client's first appearance on this charge,

25   correct?

1     MR. FUTERFAS: Yes.

2     THE COURT: Alright, Mr. Filippelli, I want to

3 make sure you understand some things. First of all, you

4 have the right to the assistance of counsel. You have Mr.

5 Futerfas here. You're retained, sir?

6     MR. FUTERFAS: Not yet. Mr. Filippelli had

7 another case. I represent him on that other case. I expect

8 to be any day. I have no problem filing an appearance for

9 these purposes and the purposes of bail, your Honor.

10     THE COURT: Very good. Alright, so you have Mr.

11 Futerfas here today and it sounds like he'll continue to

12 represent you.

13     You understand the right to counsel?

14     THE DEFENDANT: Yes.

15     THE COURT: And have you had a chance to meet with

16 Mr. Futerfas and discuss your case?

17     THE DEFENDANT: Yes.

18     THE COURT: Alright. Now you also have the right

19 not to make any statements. I don't know if you've said

20 anything so far. If you have, you don't need to continue.

21 If you decide later that you do wish to make a statement,

22 you can stop at any time. What you must understand, though,

23 is that anything you say can be used against you.

24     Do you understand that?

25     THE DEFENDANT: Yes.

THE COURT: Okay. And that's an important decision and one that you should discuss with your counsel.

Now, with respect to detention or release. Mr. Lipton, what's the government's position?

MR. LIPTON: Yes, Judge. The government's seeking a permanent order of detention. If you want, I can --

THE COURT: Well, before I ask you to go on, Mr. Futerfas, under the circumstances, are you opposing that? Or do you have --

MR. FUTERFAS: I am opposing it in part, your Honor. This is a unique circumstance. He is at the tail end of a 46 month sentence. He is currently in a halfway house in the Bronx. He was moved there from Fort Dix this past Tuesday. So, he is currently -- in a respect, he is currently detained but he's detained in a halfway house.

He is serving a sentence. And all this application is and all I'd like to do is have Mr. Filippelli be able to continue serving the sentence in the halfway house. It should be done in about five months.

I would explain to your Honor that -- what that means. The halfway house is a secure facility. He would be allowed out hours during the day to work. He punches out when he leaves and he punches in when he returns.

During the day, I'm advised, that they call his place of employment wherever that might be almost every

hour. There are also unnoticed or surprise visits by
halfway house personnel wherever it is that he may work.
So, it's kind of an unusual situation.

THE COURT: Can I interrupt --

MR. FUTERFAS: Yes.

THE COURT: I have a question. Under -- If the
status quo is maintained, is it within the discretion of the
Bureau of Prisons to determine that -- because you say he's
currently detained -- to determine that your client should
no longer be lodged at a halfway house but should be lodged
in a prison?

MR. FUTERFAS: Well, he was at Fort Dix. And if
they determine that they don't want him there because of
these charges, they want to send him back to Fort Dix, I
guess they could do that. I'm hopeful that if -- that they
wouldn't make that decision or that I can speak to them and
persuade them not to make that decision.

I think the purposes of this proceeding, your
Honor -- I guess it's relevant to this proceeding is that
obviously a change in status in terms of, I guess, and maybe
an order of detention from your Honor and I haven't
researched. I thought actually this appearance was going to
be on the week after next. I got a phone call this morning
that it was on today.

I haven't been able to research what constitutes

1  "detention". But, any finding that the halfway house is

2  insufficient would obviously constitute a change in status

3  that I think that's why we're here. I'm simply asking that

4  he maintain his position in the halfway house and be allowed

5  to go out. That he's not a risk of flight.

6  If he violates any conditions of the halfway house

7  or of his conditions of his sentence, not only would he be

8  violating conditions of any order imposed by your Honor but

9  he'd be violating conditions imposed pursuant to that

10  sentence and pursuant to whatever conditions apply to

11  someone's sentencing. So, he's really got two levels of

12  oversight.

13  THE COURT: Well, look, here's my view and I have

14  to look into this. And on either side, if you would prefer

15  to split it over all your research, that's fine as well.

16  But right now it's my understanding that Mr.

17  Filippelli is in the custody of the Attorney General. And

18  the BOP has the discretion as part of that commitment to say

19  he resides at the halfway house or he resides at Fort Dix or

20  somewhere in the BOP system.

21  So, no order that I can issue today will change

22  that. I can issue some sort of detention order that would

23  say essentially if and when he's released from the Bureau of

24  Prisons' custody, the marshal takes him into custody. But I

25  don't think that would have any affect today or any day

1    until he completes his term of sentence.

2          MR. FUTERFAS:  I think, your Honor, if your

3    Honor -- I think the only way that Mr. Filippelli could be

4    negatively affected at least from any order that your Honor

5    would impose is an order that says, I don't think halfway

6    house is sufficient and I think he should be -- You know, if

7    your Honor did that, then the BOP would look at that.

8          If your Honor did not do that, and if your Honor

9    said look, I think he's under custody of the BOP, he's, you

10   know, whatever the charges are they are but he's custody of

11   the BOP, they know what they're doing.  And I have his wife

12   here.  He would be willing to put up his house.

13         His equity in the house, his family home, is about

14   $750,000.  So he could -- In other words, if your Honor

15   wanted -- I guess the issue is if your Honor wanted some

16   security in addition to the BOP oversight that when he was

17   out during the day that he's not going to do anything to

18   violate either what the BOP -- his obligations to them are

19   or your Honor --

20         THE COURT:  I understand what you're saying.

21         MR. FUTERFAS:  He can post his house in a bond and

22   cover that.  But I think that would -- that certainly --

23         THE COURT:  I think I'm not in a position to make

24   that determination until I know -- and maybe Mr. Lipton you

25   know, maybe you don't -- but what the BOP plans to do under

1  the current circumstances with respect to the existing

2  sentence.

3       MR. LIPTON:  I don't know what they're going to do

4  but I can tell you what the history has been -- the short

5  history so far.

6       Just to address one of your Honor's points.  If

7  your Honor was, for example, willing to let him out on an R

8  and R bond with no property or no -- nothing secured, he

9  would then go back to be in the custody of the Bureau of

10  Prisons.  And, as your Honor said, it's up to the discretion

11  of the BOP -- my understanding of where he is -- until he

12  serves out his sentence.

13       It's at the Bureau of Prisons' discretion that he

14  was allowed to go to a halfway house.  And but for an

15  oversight we had -- the arrest warrants were issued on

16  February 6th.  The arrests in most of that case were made on

17  the 7th.  The writ to bring Mr. Filippelli down for the first

18  status conference before Judge Garaufis, was sent to Fort

19  Dix on the 8th.

20       We assumed it was confirmed and, I think, but for

21  an oversight, he would have not been released to the halfway

22  house.  I don't know that for certain, but that is my

23  suspicion after talking to Fort Dix and not knowing that he

24  had been released to the halfway house until I just learned

25  about it through by chance.

1    THE COURT:  So, Mr. Filippelli does not appear on
2  a writ or by virtue of an arrest?

3    MR. LIPTON:  Of arrest.  Because he was released
4  to the halfway house and then consultation with the marshal
5  service and the people at the Bronx House of Corrections
6  where he's at, we effectuated arrest pursuant to the arrest
7  warrant on the indictment.

8    So, I think, your Honor, he is in BOP custody
9  until his sentence is over.  Whether or not BOP thinks it
10  should be in a halfway house or back in custody of Fort Dix
11  or somewhere else.  I think that's up to the Bureau of
12  Prisons.  Your Honor obviously can make a recommendation and
13  they --

14    THE COURT:  No, I don't intend to make a
15  recommendation as to -- I don't think I'm competent to in
16  these circumstances to tell BOP how it should execute the
17  sentence previously imposed.

18    What I do need to make a determination about is
19  once I know what BOP has in mind, then I or one of the other
20  magistrate judges has to make a determination about what, if
21  any, additional conditions should be imposed if Mr.
22  Filippelli remains in the halfway house.  If he is put in
23  some other, you know, custodial facility, then I don't think
24  there's an issue.

25    MR. LIPTON:  Your Honor, I think it probably can

wait. I know your Honor wouldn't want to give an advisory

opinion. But I think you also, if your Honor was of the

opinion to do this, to make a determination on bail as to

this case given all the factors under the Bail Reform Act

and I can speak to that your Honor.

We're in a position where we now have the

defendant who is serving the tail end of a 46-month sentence

that was imposed by Judge Hellerstein (ph) in the Southern

District based on a RICO case that involved at least a half

dozen or four or five at least extortions and other criminal

predicates.

In that case, the defendant sought bail. I don't

think the magistrate judge heard argument or there was a

bail proceeding before the magistrate. But, ultimately,

Judge Hellerstein did hear bail application from the

defendant in which a substantial amount of property was

posted for, I believe from the transcript, a 3.5 or four

million dollar bond that was secured by a number of

properties and at least a half a dozen individuals were

going to sign on his behalf.

The defendant argued that, in addition, he should

have all sorts of other conditions like home detention, his

cell phone being monitored and things like that.

After a lengthy argument which I can go through a

little bit with your Honor about the strength of the

evidence in that case which showed, among other things, that

Mr. Filippelli was sort of a rising star in the Gambino

family.

That he was an acting captain acting on behalf of

the boss of the family at the time his crew, Arnold Spiteri

(ph), that there was a number of intercepts from conceptual

-- a number of conceptual conversations that were recorded

from an undercover officer in that case that showed that Mr.

Filippelli was involved and directed extortions and that he

was very closely aligned with the hierarchy of the family,

specifically Mr. Spiteri.

After that argument, Judge Hellerstein found that

there was no condition or set of conditions that would

ameliorate any danger to the community. And he found that

the substantial bail package in that case was not enough.

And he detained him pretrial.

THE COURT: Let me ask you a question. I'm sorry

to interrupt but -- I'm happy to make a determination to the

extent it's appropriate today. But my concern is unless I

know the decision that BOP makes -- Because, look, you're

part of the same executive branch that they are; the same

Justice Department.

So, at some point, the Justice Department is going

to say we are content to have Mr. Filippelli in a halfway

house to serve out his sentence or not. But if the Justice

1   Department by the BOP says yes, the halfway house is okay,

2   then I think that changes my consideration of your

3   application to say that he needs to be detained anyway

4   because he's speaking with two voices.

5       So, I think for me to make an intelligent

6   decision, I need to know what BOP plans to do.  And maybe

7   that's a decision that goes farther up the chain within the

8   (ui) if the U.S. Attorney thinks it should be one thing and

9   BOP thinks something else.

10      MR. LIPTON:  Well, let me speak that, your Honor.

11  I don't think the U.S. Attorney's Office really has in the

12  past or in this case probably would weigh in.  It would be

13  the Bureau of Prisons based on what information they

14  normally consider as to where he housed.

15      If they deem new charges of the nature that are

16  brought here are sufficient to stay that he should no longer

17  be eligible for the halfway house under their criteria, I

18  assume they'll revoke it.  I might suggest that we put it

19  over for a week.  I can consult with the Bureau of Prisons.

20  They're going to ultimately do what they want no matter

21  what.

22      THE COURT:  Well, no, that's the point where I

23  want to be clear.  Because to me BOP -- It doesn't matter to

24  me who speaks for the Justice Department on this issue.  But

25  if BOP says notwithstanding this new charge we are content

1  to have him in a halfway house, to me that is the position

2  of the Justice Department.

3       And if the U.S. Attorney has a different position,

4  then I think the Justice Department needs to internally come

5  to some closure on what its position is.  But I'm not going

6  to hear argument as to why one component of DOJ says is not

7  a sufficient basis for protecting the community.

8       MR. LIPTON:  I understand, your Honor.  I think --

9  and I don't know if I need to go too far into this but

10  because the Bureau of Prisons is only really concerned about

11  the existing charge and incarceration on that, they

12  obviously can consider whatever factors they think are

13  appropriate.

14       THE COURT:  That's why to the extent that their

15  disagreement between your office and the BOP about (ui) this

16  position, there are, you know, internal resolution

17  procedures that you have available to you that I simply

18  can't override.

19       MR. LIPTON:  I haven't discussed it with the

20  appropriate officials at the Bureau of Prisons.  I will.

21  We'll proceed however your Honor thinks is appropriate.  And

22  I'll be able to get back to you very shortly.

23       THE COURT:  Okay, yeah, I just think it would be

24  premature for me to do it today.  So --

25       MR. FUTERFAS:  Well, your Honor, then the issue is

1    where does Mr. Filippelli go.  I mean, presumably if the BOP

2    decides that whether it's today or tomorrow or whenever it

3    might be that they're content for him to be at the halfway

4    house, then I would suggest that when we're done here today,

5    your Honor direct him or he's directed anyway to report to

6    the Bronx halfway house.

7          And he'd be there and maintained under the

8    supervision in full.  The reason, obviously anticipating the

9    government's arguments a little bit, the reason I had his

10   wife come and have him at least available -- he and his wife

11   available to sign a bond is just to the extent that until

12   the government using the big G for government determines

13   what it wants to do, to the extent your Honor wanted any

14   additional reassurance.

15         Look, you understand even if the BOP has you there

16   and keeps you at the halfway house, you have this other case

17   and you have to abide by conditions, etcetera, and you're

18   signing a bond, a significant bond to do that, I thought it

19   would be kind of a -- maybe it's belt and suspenders -- but

20   I thought I'd have that available for the Court anyway.

21         THE COURT:  Well, if you're doing that,

22   obviously -- Mr. Lipton, what's your -- in the interim

23   between now and when we're next together?

24         MR. LIPTON:  My position would be he's obviously

25   on -- he's the custody of Bureau of Prisons for the case in

1   the Southern District.  But he's also on pretrial -- under

2   pretrial circumstances now --

3           THE COURT:  He's facing charges now --

4           MR. LIPTON:  And so the marshal service actually

5   had custody for those.  And what I would be asking is that

6   if your Honor is not going to rule today, he is in the

7   marshals service custody and that he will be brought to the

8   appropriate MDC or MCC facility for housing until the

9   determination is made.

10          THE COURT:  I do think that this is a situation

11  where it should be a temporary order of detention pending

12  the resolution of this issue.

13          I would be leaning towards that in any event based

14  on my concern that somebody who is in this situation is now

15  facing additional charges after having already been

16  sentenced and only just recently being released to a halfway

17  house combined with the determination that's previously been

18  made.

19          And that's why I say to the extent that BOP

20  determines of the Justice Department determines that even if

21  under these conditions the halfway house would be

22  appropriate, that might, you know, that might well persuade

23  me that no further conditions of bond are necessary.  But I

24  just don't have that information.  Until then, though, I

25  think a temporary order is appropriate.

1          MR. FUTERFAS:  Your Honor, I would request the

2     following.  And I don't want, obviously, the record to -- we

3     have lots of arguments with respect to this case; factual

4     arguments.  You know, these counts in the indictment, for

5     instance, alleging conspiracy beginning -- an extortion

6     conspiracy beginning December of '03 continuing up to the

7     present.

8          Mr. Filippelli in the Southern District

9     investigation was -- there were numerous wire taps, there

10    were consensual recordings in that case.  It was an intense

11    investigation for two years.

12         He was indicted in that case in March of '05,

13    which means that if the conduct alleged here against a lot

14    of individuals, not just Mr. Filippelli, in Count 10, that's

15    at page 108 of the indictment.

16         THE COURT:  Yeah.

17         MR. FUTERFAS:  That went on for a year before his

18    arrest in the Southern District.  And, I mean, it was an

19    intensive investigation in the Southern District with

20    numerous -- all kinds of investigative techniques.  Nothing

21    of this surfaced.

22         Then he was on detention.  Judge Hellerstein found

23    specifically because there was a -- because he was named in

24    RICO in that case, that he would be detained.  And we were

25    actually appealing that decision to the Second Circuit

1  because during those arguments -- and if the government

2  wants to revisit, I'm happy to do so -- the government

3  admitted in those arguments that they had no tape and they

4  had no evidence anywhere for Judge Hellerstein that Mr.

5  Filippelli hurt anyone, directed anyone to have hurt anyone

6  else or was involved in any specific crime of violence in

7  any way.

8          And that was on the record.  And there are

9  transcripts of that.  Of course we've got the whole record.

10  We were actually in the Second Circuit appealing Judge

11  Hellerstein's order of detention when a global resolution

12  was released and the case bled out.

13          You know, I'm happy to re-litigate all that and

14  certainly litigate for the government this case because I

15  don't know if they have a single tape recording with his

16  voice on it.  I don't know when they say that any of this

17  occurred.  He was arrested in March of '05.  He was in the

18  MDC the whole time, then in Fort Dix --

19          THE COURT:  Can I interrupt?  And forgive me for

20  interrupting but is the point that I shouldn't order

21  temporary detention?

22          MR. FUTERFAS:  Yeah, the point is that but also

23  the point is I appreciate your Honor believing and

24  understanding that the (ui) of course at this point is to

25  see what the government, the large government, does.  I just

1    don't want the record to be silent from my prospective --

2              THE COURT: No, I --

3              MR. FUTERFAS: -- as to that I don't think -- I

4    don't think that -- and I don't think an order of detention

5    is appropriate. I think that this is an unusual case

6    because he is currently being supervised by the BOP. He is

7    currently under, essentially, a house arrest situation by

8    the Bureau of Prisons.

9              THE COURT: Right, but let me make clear my

10   understanding. And I'm happy to go an alternate course

11   which I'll describe in a moment.

12             Right now we have the BOP put him in a halfway

13   house without sensitive information about the circumstances

14   of this case. So, I'm not going to --

15             MR. FUTERFAS: I'm not going to concede that

16   but --

17             THE COURT: That's how it appears to me. And

18   that's how it appears to me.

19             MR. FUTERFAS: Okay.

20             THE COURT: So, to the extent that a decision now

21   to simply return him to the halfway house might, you know,

22   create a risk of flight in this case or a danger to the

23   community. Obviously, I fear that the government on a

24   request for a permanent order.

25             So, you know, the alternate course is to say look,

1    if he does go back to the halfway house, then I need to hear

2    the proffer on the application for detention.  I might as

3    well do that now because you've got your suretors here and I

4    can take their signatures now if I determine that that's

5    appropriate in the event that he returns to the halfway

6    house.

7           And there's no harm done if he's returned to a

8    custodial facility.  But, in any event, I'll have heard your

9    argument.

10          MR. FUTERFAS:  May I have a moment?

11          THE COURT:  Certainly.

12          (Pause in proceedings)

13          MR. FUTERFAS:  One moment, your Honor, thank you.

14          (Pause in proceedings)

15          MR. FUTERFAS:  Your Honor, I'm ready.  Thank you.

16   Your Honor, we think we'll take your Honor's recommendation,

17   which is your initial instinct to see what the BOP's going

18   to do.

19          But we do have a request that if -- however long

20   this takes, whether this takes the BOP three days or a week

21   or whatever period of time -- I know we had another

22   appearance apparently on February 27th.  That might be the

23   first status appearance before Judge Garaufis.  I'm not

24   sure.

25          But, the request would be that rather than be

1  housed at the MDC, which I understand there are all kinds of

2  steps in place and everything else, and it would be

3  impossible, honestly, to meet with them because I'm going to

4  be in a line with fifty other lawyers trying to meet new

5  detainees, that he be sent back to Fort Dix where he was

6  until the next appearance or until there's some new

7  information that's material as to the suggestion that your

8  Honor made.

9      MR. LIPTON:  Maybe I can address that to help

10  alleviate -- Because there are a number of individuals that

11  are being housed at the MDC and we have already worked out

12  those issues with the separation orders and administrator of

13  detention, we've sought to have Mr. Filippelli at the MCC

14  where there are not those issues.  And my understanding the

15  marshal service is going to be housing him there should we

16  proceed as your Honor suggested.

17      THE COURT:  Does that alleviate your concern?

18      MR. FUTERFAS:  May I have a moment with the

19  government?

20      THE COURT:  Yes.

21      (Pause in proceedings)

22      MR. FUTERFAS:  Your Honor, thank you.  Okay,

23  that's -- I think that if your Honor could certainly if not

24  make that recommendation at least not oppose or deny such a

25  recommendation.  That is that rather than the MDC or MCC,

1  which are both crowded and, you know, facilities that are

2  serious detention facilities, that at least that he go back

3  to Fort Dix until such time as the BOP, which is a

4  completely different situation than either of those

5  situations.

6       I don't think the government opposes it.  It will,

7  of course, be up to the BOP to do what they feel is right.

8  But at least until the BOP kind of figures out what it wants

9  to do, that would be infinitely preferable for us and for me

10 personally since going down to Fort Dix and seeing him in

11 that environment is a completely different situation than in

12 local --

13      I've waited -- just anecdotally, I've waited, you

14 know the hour that it takes, the hour and ten minutes it

15 takes to drive to Fort Dix, I've waited double that time to

16 see inmates in local facilities.

17      THE COURT:  Mr. Futerfas, if they want to put him

18 in Fort Dix, it's fine with me.  I don't know that I'm

19 really competent to tell them where they should house him.

20 I assume MDC is going to be within the marshals' custody and

21 Fort Dix back at BOP.

22      MR. FUTERFAS:  Right.

23      THE COURT:  And I just don't have enough

24 information to intelligently advise them what to do.  Mr.

25 Lipton?

1        MR. LIPTON:  I just want to make sure the record's

2   clear.  Obviously, Mr. Futerfas can make recommendation on

3   his client's behalf.  As your Honor said with regard to you

4   and with regard to the U.S. Attorney's office, we're not

5   going to be able to tell the Bureau of Prisons what they

6   should do in terms of where or how to house Mr. Filippelli.

7        Right now I know that the marshals will be

8   bringing him to the MCC.  I will today contact my contacts

9   at the Bureau of Prisons and let them know what's happening

10  and find out what they're planning on doing and advise Mr.

11  Futerfas as soon as possible.

12        THE COURT:  Yes, look, if he's returned to Fort

13  Dix and the custody of the Bureau of Prisons and that's

14  where they determine to lodge him, then I think the

15  detention issue is going to be muted in any event.

16        MR. LIPTON:  It may well be.

17        THE COURT:  Yeah.  So, let me suggest this.  Let's

18  set this down for -- enter a temporary order and put it for

19  a week do you think is sufficient to make the determination?

20        (Pause in proceedings)

21        MR. FUTERFAS:  Your Honor, what we'll do is there

22  is in front of me an application and order of excludable

23  delay from today until February 27th, which I understand to

24  be the first status before Judge Garaufis.

25        I am cautiously optimistic that the MCC will not

1   want to have anyone in its custody since it's a very crowded

2   facility a minute longer than they have to. So, even though

3   he may spend the night here tonight, I am hopeful, to say

4   the least, that they would be it and they would send him

5   back to Fort Dix.

6         And I think we would ask that just we return on

7   February 27th. By then, if not before, the government will

8   advise. If there's something I want to advance, I can

9   always do that.

10         THE COURT: Yeah. Mr. Lipton, make sense to you?

11         MR. LIPTON: Judge, that does, Judge. Yes.

12         THE COURT: The one wrinkle I'll add to that I

13   think we should make an appearance before the duty

14   magistrate that day. I have no idea how much other business

15   is going to be poured at Garaufis but it may be a crowded

16   docket. And it may make sense to put this on, you know,

17   separately before the duty magistrate. I don't have a

18   preference, just a thought.

19         MR. FUTERFAS: I agree with your Honor. There's

20   sixty defendants and attorneys for Judge Garaufis.

21   Everyone's going to have issues.

22         THE COURT: Yeah, I'll leave it before Judge

23   Garaufis but if the issue remains on the table and there's a

24   lot going on, we can always just agree then to send it to

25   the duty magistrate.

1          MR. FUTERFAS:  Okay.

2          (Pause in proceedings)

3          THE COURT:  Alright, is there anything else?

4          MR. LIPTON:  Judge, I think it just has to be

5    advised about the excludable delay.

6          THE COURT:  Oh, yes.  Mr. Filippelli, now you've

7    entered a plea on the charges against you.  The government

8    would normally have 70 days to bring this to trial.  In

9    light of the complexity of the case, I think that's the

10   basis.

11         MR. LIPTON:  Yes, Judge.

12         THE COURT:  In light of the complexity of the

13   case, the attorneys suggest that I not count from now until

14   your appearance before Judge Garaufis on the 27th, which

15   actually gives the government an extra two weeks or so to

16   bring this to trial.

17         Do you understand what I'm explaining?

18         MR. FUTERFAS:  Yes.  Your Honor, we are -- we've

19   spoken about this and we are going to sign.  I've signed and

20   Mr. Filippelli will sign the order of excludable delay.

21         I am -- In doing so, your Honor, I just want the

22   record to be clear our position is that it is essentially a

23   one count -- it's a substantive conspiracy count.  I don't

24   know how complex it really is.  My guess is it may not be.

25   But I think given all of the circumstances, given the bail

1  situation, given the issues that we have that we discussed

2  here between the BOP --

3      THE COURT:  I mean they're finding other than it's

4  sufficiently complex to warrant the delay for the next two

5  weeks.  Beyond that, who knows what will happen and Judge

6  Garaufis will determine that.

7      MR. FUTERFAS:  Thank you, your Honor.

8      THE COURT:  Okay.

9      MR. FUTERFAS:  It's been executed by myself and

10  Mr. Filippelli.

11      THE COURT:  And I see you have signed, Mr. Lipton.

12      MR. LIPTON:  Yes, Judge.

13      THE COURT:  Alright.

14      (Pause in proceedings)

15      THE COURT:  Alright, and just so the record is

16  complete, I've written as the basis for the exclusion,

17  complexity of the case under current circumstances without

18  prejudice to any later determination by Judge Garaufis.

19      Alright, is there anything else?

20      MR. FUTERFAS:  I have nothing, your Honor.

21      THE COURT:  Alright, thank you all.

22      MR. FUTERFAS:  Thank you.

23      * * * * * * * * * * * * *

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct transcript

19 from the electronic sound recording of the proceedings in

20 the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON                    February 22, 2008